# Sexual Misconduct

UA-03

## About This Policy

**Effective Dates:**
03-01-2015

**Last Updated:**
01-01-2018

**Responsible University Administrator:**
President, Indiana University University Faculty Council

**Policy Contact:**
Emily Springston
University Director of Institutional Equity & Title IX Coordinator
titleix@iu.edu

## Scope

This Indiana University policy is designed to protect all members of the University community:

- all students
- all employees: academic, staff, temporary (hourly)
- others including volunteers and visitors while on Indiana University property or involved in an Indiana University program off-campus.

The policy applies regardless of sex, gender, sexual orientation, gender identity, immigration status and citizenship status. It applies to relationships among peers as well as to superior-subordinate relationships.

Other IU policies and codes related to misconduct will remain in effect for complaints of misconduct other than sexual misconduct. However, any report or complaint of misconduct that includes elements defined below will be addressed in accordance with this sexual misconduct policy and included procedures.

## Policy Statement

Indiana University prohibits discrimination on the basis of sex or gender in its educational programs and activities. Discrimination on the basis of sex or gender is also prohibited by federal laws, including Title VII and Title IX. This policy governs the University's response to discrimination based on sex or gender, and all forms of sexual misconduct (which includes sexual harassment, sexual assault, other forms of sexual violence, dating violence, domestic violence, sexual exploitation and stalking (see Definitions below). Such behaviors are against the law and are unacceptable behaviors under Indiana University policy. (See the Indiana University Non-Discrimination Policy here.) These unacceptable behaviors are hereafter referred to as "Sexual Misconduct." The University does not tolerate sexual misconduct and it will take action to prevent and address such misconduct. The University has jurisdiction over all Title IX and related complaints. Questions about Title IX may be directed to Indiana University's Title IX Coordinator, or the Office of Civil Rights (See Additional Contacts below).

Individuals who have experienced sexual misconduct are strongly urged to promptly report such incidents. Indiana University will respond promptly to all reports of sexual misconduct. According to the procedures below, the University will provide a fair and impartial investigation and resolution for complaints and, where appropriate, issue sanctions and remedial measures. The severity of the corrective action, up to and including termination

or expulsion of the offender, will depend on the circumstances of the particular case. Any person who is a responsible employee (as defined below), at the University, such as administrators, supervisors, managers or faculty members, and who has received information or has knowledge of sexual misconduct, must make a report to designated University officials or be subject to disciplinary action (see section on Responsible Employees below). Retaliation against anyone who makes a report of sexual misconduct is prohibited by University policy as well as Title IX and other state and federal laws.

Procedures for reporting incidents of sexual misconduct, and investigating and adjudicating sexual misconduct complaints are part of this policy and are included or linked below. In appropriate cases, and upon consultation with the Vice President and General Counsel, the University reserves the right to take prompt action in accordance with other university procedures.

On or Off Campus Behaviors

This policy applies to sexual misconduct that occurs on campus, or off campus in the context of any University program or activity, or among current members of the University community. This policy also applies to sexual misconduct that has a continuing adverse effect or creates a hostile environment on campus or in any University program or activity whether on or off campus including but not limited to, sexual misconduct in connection with an academic course assignment, internship, practicum, field trip, study abroad program, student teaching, research, or other University activity; or sexual misconduct in connection with any activity sponsored, conducted, or authorized by the University or by a student organization.

When a student organization has contributed to or created a hostile environment in connection with an incident of sexual misconduct, the student organization will be subject to discipline and appropriate sanctions.

In situations not covered above, but where the sexual misconduct undermines the security of the University community or the integrity of the educational process or poses a serious threat to self or others, other applicable University procedures for general misconduct may be applied.

Sexual Harassment

Sexual harassment is unwelcome conduct or behavior of a sexual nature. Sexual harassment includes sexual violence (see definition). Both violent and non-violent sexual harassment is prohibited. Sexual harassment can include unwelcome sexual advances, requests for sexual favors and other verbal, nonverbal, written, electronic (e.g. by e-mail, text, social media, etc.), or physical conduct of a sexual nature. Sexual harassment occurs when:

1. submission to or rejection of such conduct is made either explicitly or implicitly a condition of an individual's employment or academic standing or is used as the basis for employment decisions or for academic evaluation, grades, or advancement (quid pro quo), or when
2. such conduct is sufficiently severe, pervasive or persistent to limit or deny a person's ability to participate in or benefit from the University's educational programs or affects employment, creating a hostile environment.

Sex/Gender-Based Discrimination

Sex/Gender-based discrimination is verbal, nonverbal, graphic, or physical aggression, intimidation, or hostile conduct based on sex, sex-stereotyping, sexual orientation or gender identity, but not involving conduct of a sexual nature, when such conduct is sufficiently severe, persistent, or pervasive that it interferes with or limits a person's ability to participate in or benefit from the University's education or work programs or activities. For example, persistent disparagement of a person based on a perceived lack of stereotypical masculinity or femininity or exclusion from an activity based on sexual orientation or gender identity is prohibited under this policy.

Sexual Assault

Sexual assault includes:

1. Non-consensual Sexual Penetration is committed when an individual subjects another person to sexual penetration (see below) without the consent of the person, and/or by force.
2. Non-consensual Sexual Contact intentional sexual touching by an individual of the intimate area of another person (i.e., genitals, breasts, buttocks) or intentional sexual touching of another person with any of these body parts, without the consent of the person, and/or by force.

Consent

Consent is an agreement expressed through affirmative, voluntary words or actions, and mutually understandable to all parties involved, to engage in a specific sexual act at a specific time:

- Consent can be withdrawn at any time, as long as it is clearly communicated.
- Consent cannot be coerced or compelled by force, threat, deception or intimidation.
- Consent cannot be given by someone who is incapacitated, as defined below.
- Consent cannot be assumed based on silence, the absence of “no” or “stop”, the existence of a prior or current relationship, or prior sexual activity.

Incapacitated

A person is incapable of consent if they are unable to *understand the facts, nature, extent, or implications* of the situation due to drugs, alcohol, a mental disability, being asleep or unconscious, or based on their age (pursuant to Indiana law).

Consent does not exist when the individual initiating sexual activity *knew or should have known* of the other person’s incapacitation.

Intellectual Inquiry and Debate

In determining whether sexual misconduct has occurred and what type of remedy, if any, might be appropriate in a given case, the University will also consider the fact that free intellectual inquiry, debate, and constructive dialogue are vital to the University’s academic mission and must be protected even when the views expressed are unpopular or controversial. Accordingly, any form of speech or conduct that is protected by state or federal law, including the First Amendment, is not subject to this policy.

The definition of sexual harassment in this policy is meant neither to proscribe nor to inhibit discussions, in or out of the classroom, of complex, controversial, or sensitive matters, including matters involving sex, gender, sexuality, sexual orientation, sexual behavior, or gender identity or expression, when in the judgment of a reasonable person they arise for legitimate pedagogical purposes. This includes intellectual inquiry, debate, and dialogue on issues of sexual misconduct. The mere expression of views, words, symbols or thoughts that some people find offensive, does not create a hostile environment.

Awareness, Education, Prevention and Training Programs

Every IU campus shall publicize and provide ongoing educational programming for students, employees and other members of the University community to promote awareness of the problems caused by sexual misconduct and to help prevent and attempt to reduce the risk of the occurrence of sexual misconduct. Educational programs will include information on how and where to report incidents of sexual misconduct, resources available, as well as safe and positive options for bystander intervention that may be carried out by individuals to prevent harm or intervene when there is a risk of sexual misconduct being inflicted on another person. Efforts will be made to ensure that educational programs are culturally relevant and inclusive of the diverse communities and identities found at each IU campus.

Employee training shall be provided to those involved in reporting, receiving reports, investigating, adjudicating and otherwise responding to charges of sexual misconduct at the University. Certain training may be mandated by applicable federal or state law. The appropriate training will be tailored to the audience, and include reporting and response obligations, available resources, as well as information about how to prevent and identify sexual misconduct. Individuals specifically involved in implementing the University’s sexual misconduct procedures will be trained on issues and applicable policies and procedures relating to sexual misconduct, as well as how to conduct the investigation and hearing process in a manner that protects the safety of all parties and promotes fairness and accountability.

**Resource Information**

The University will disseminate campus-specific information regarding available on and off campus resources through various methods including, the University’s Stop Sexual Violence Website, programing, and other relevant materials such as campus specific brochures. Resource information will include, but is not limited to:

- University and community psychological and counseling resources;
- University and community medical resources (including the availability of nurses trained in sexual assault response);
- Resources for non-U.S. citizens (visa, immigration, and translation assistance);
- How to report an incident of sexual misconduct to the University and local law enforcement;
- Available confidential employees and student advocates;
- Information and assistance regarding adjustments to academic housing, financial aid, obtaining no contact orders, and other needs on campus;
- Community resources such as legal assistance and obtaining protective orders.

Duties of Title IX Coordinator
Indiana University's Title IX Coordinator will be informed of all reports of sexual misconduct, and will oversee the University's review, investigation, and resolution of those reports to ensure the University's compliance with Title IX, and related laws, and the effective implementation of this policy. The Title IX Coordinator will have adequate training on what constitutes sexual harassment, including sexual violence.

The Title IX Coordinator is:

1. Responsible for oversight of the investigation and resolution of all reports of sexual harassment, sexual violence, stalking, and domestic and dating violence involving students, staff, and faculty;
2. Knowledgeable and trained in University policies and procedures and relevant state and federal laws;
3. Available to advise any individual, including a complainant, a respondent, or a third party, about the courses of action available at the University, both informally and formally, and in the community;
4. Available to provide assistance to any University employee regarding how to respond appropriately to a report of sexual misconduct;
5. Responsible for monitoring full compliance with all procedural requirements, record-keeping, and timeframes outlined in this policy;
6. Responsible for overseeing training, prevention, and education efforts, and any reviews of climate and culture; and
7. Responsible for providing the University aggregate, non-identifying information in regard to reports, investigations, resolutions, and sanctions.

Deputy Title IX Coordinators for each campus will be responsible for tracking and reporting to the University Title IX Coordinator all incidents of sexual misconduct on their respective campus. Deputy Title IX Coordinators will work with the University Title IX Coordinator to ensure that the appropriate designated campus officials are involved in investigating and adjudicating complaints according to this Sexual Misconduct Policy and other applicable University policies and procedures.

Deputy Title IX Coordinators and senior student affairs professionals on each campus will work with the University Title IX Coordinator to ensure that adequate education, training, sanctions, and appropriate resources are available and provided on their respective campus. Student affairs professionals are expected to assist in educating the campus community and directing those who report an incident of sexual misconduct to the appropriate campus resources.

## Reason For Policy

Indiana University is committed to the safety and well-being of all members of the University community including students and employees. Indiana University recognizes that sexual misconduct may result in grave and often long-lasting effects on those involved and is committed to timely investigation of allegations of sexual misconduct, use of interim measures when appropriate, and appropriate actions and consequences following investigations. Indiana University is committed to compliance with state and federal laws regarding sexual misconduct, required

reporting to state and federal agencies, and to working with law enforcement officials and agencies. The University is also committed to using its resources in research and education to improve preventative programs.

## Procedure

Immediate Assistance
**In an emergency or if you see a crime in progress, always call 911 immediately.**

Each campus of the University shall provide, publicize and keep updated, information for immediate assistance, including contact information for emergency and medical assistance, counseling services, as well as local law enforcement. Information about ways to report anonymously or to speak to a confidential employee will also be provided for each campus (see Confidential Employee section).

The University and each campus will provide written information to anyone who reports to the University that they have experienced sexual misconduct, about:

- University procedures dealing with sexual misconduct, including to whom and how the alleged offense should be reported, as well as their rights and options;
- The importance of preserving evidence that may assist in proving the alleged criminal offense occurred, as well as how to preserve such evidence;
- Options about the involvement of law enforcement;
- Rights and University responsibilities with respect to orders of protection and how to obtain such orders; and
- Available campus and community resources.

This information will also be widely publicized on http://stopsexualviolence.iu.edu/

Reporting an Incident
**In an emergency or where immediate help is needed, call 911.**

Anyone wishing to report an incident of sexual misconduct can do so using the following methods:

- Reporting directly to campus or local law enforcement if the incident involves sexual violence;
- Reporting directly to the student judicial conduct office or Dean of Students for the campus;
- Reporting directly to the Deputy Title IX Coordinator for the campus; or
- Reporting directly to the University Title IX Coordinator.

All reports of sexual misconduct made to a Responsible Employee that are not initially reported to the Deputy Title IX Coordinator(s) for the respective campus, will be shared with the Deputy Title IX Coordinator(s) as well as the University Title IX Coordinator in a timely manner. In addition, if a report of sexual misconduct is not made initially to the Indiana University Police Department (IUPD), and the information indicates it may be a crime reportable under the Clery Act, non-identifying information regarding the date, time, location and nature of the crime will be shared with IUPD for purposes of complying with the Clery Act. If the University and/or Deputy Title IX Coordinator(s) receive a report that indicates law enforcement should be informed and involved due to the potential threat to health and safety of an individual or the University community, they may also share the identifying information needed for appropriate response by IUPD (see Confidentiality and Privacy section).

Sexual Misconduct Involving a Child/Minor
Sexual misconduct involving a child/minor (anyone under 18 years of age) must be reported. Indiana state law requires that **anyperson** who has reason to believe that a child/minor is a victim of child abuse or neglect (including sexual misconduct) has an affirmative duty to make an oral report to Child Protective Services (CPS) **1-800-800-5556** or to their local law enforcement or to the IU Police Department. Failure to report may result in criminal charges. See the IU policy on Programs Involving Children for more information.

Amnesty

The University strongly encourages students to report instances of sexual misconduct. Therefore, students who report an incident of sexual misconduct will not be disciplined by the University for any violations of the Code of Students Rights and Responsibilities related to their drug and/or alcohol consumption in connection with the reported incident of sexual misconduct.

Students are also afforded immunity against certain charges for alcohol related crimes under Indiana's Lifeline Law in connection with a report of a medical emergency, so long as they cooperate with law enforcement at the scene. (See IC 7.1-5-1-6.5)

**Retaliation**

Protections against retaliation are critical to reducing the prevalence of sexual misconduct within the University community. Retaliation against anyone who has reported an incident of sexual misconduct, provided information, or participated in procedures or an investigation into a report of sexual misconduct, is prohibited by the University and will not be tolerated. Acts of retaliation include intimidation, threats, and/or harassment, whether physical or communicated verbally or via written communication (including the use of e-mail, texts and social media), as well as adverse changes in work or academic environments or other adverse actions or threats. The University will take steps to prevent retaliation, and will impose sanctions on anyone or any group who is found to have engaged in retaliation in violation of this policy. Concerns about potential retaliation in connection with a report of sexual misconduct should be reported to a Deputy Title IX Coordinator or the University Title IX Coordinator.

**The Role of a Responsible Employee to Report and Respond to Sexual Misconduct**

The University encourages anyone who has experienced sexual misconduct to talk to someone about what happened, to ensure they are informed of the available support, resources and applicable complaint processes and to allow the University to respond appropriately. The information below explains the obligations of certain employees to report information brought to their attention regarding incidents of sexual misconduct to the appropriate University officials.

*Responsible Employees*

Pursuant to Title IX, a "responsible employee" includes those University employees who have the authority to redress sexual misconduct, who have the duty to report incidents of sexual misconduct, or who a student could reasonably believe has this authority or duty.

The University's responsible employees include, but are not limited to:

- • All instructors, including full-time professors, adjuncts, lecturers, associate instructors (AIs), teaching assistants (TAs), and any others who offer instruction (whether in-person or online) or office hours to students;
- All advisors;
- All coaches, and other athletic staff who interact directly with students;
- All student affairs administrators;
- All residential hall staff;
- All employees who work in offices that interface with students; and
- All supervisors and University officials.

When an individual tells a responsible employee about an incident of sexual misconduct, that individual has the right to expect the University to take immediate and appropriate steps to investigate what happened and to resolve the matter promptly and equitably. Therefore, Responsible Employees have an obligation to report the information as explained below, as well as assist the individual in seeking medical attention and emergency response where appropriate, in understanding available resources on and off campus (see Resource Information section), and in understanding their options in making a criminal complaint as well as a complaint through the University's procedures set forth in this policy.

If the incident is an emergency or poses a serious and continuing threat, the responsible employee should first call 911 or campus police immediately. In all situations, a responsible employee must report to the Title IX Coordinator or the Deputy Title IX Coordinator for their campus. The responsible employee must report all relevant

details of the alleged sexual misconduct that are known or reasonably known to them, or that have been shared with them, that the University will need to be aware of to determine what happened. This includes the names of the individual(s) affected and alleged perpetrator(s), any witnesses, and any other relevant facts, including the date, time and specific location of the alleged incident. A responsible employee should not discuss or share any information related to the incident, including the individual's name, with anyone other than the Deputy and University Title IX Coordinators, and those directly involved in handling the University's response, unless they received the individual's prior consent or in the event of an emergency or existing threat to anyone's health and safety.

Supervisors may request a responsible employee to notify them if the responsible employee has made a report about an incident of sexual misconduct, however the supervisor may not require the responsible employee to share any details about the incident. Supervisors may contact the Deputy Title IX Coordinator or the University Title IX Coordinator with any questions.

Responsible employees should make every effort to ensure that all individuals, including students, understand that the employee is legally obligated to make a report to the University Title IX Coordinator or a Deputy Title IX Coordinator in the event they are made aware of an incident of sexual misconduct.

In some instances, an individual who has experienced sexual misconduct may express a desire that the University not investigate the incident and/or not inform the individual accused. In those situations, the responsible employee must still report the information known to them, as required, but should also explain to the individual that the University will strongly consider the request, and will generally honor the request except in limited circumstances where the safety and well-being of the individual or the community outweighs the reasons for the request. (See Requests for No-University Action below.) In reporting the details of the incident to the Title IX Coordinator, the responsible employee should ensure they inform the Coordinator of the individual's request. Responsible employees who are also Campus Security Authorities (CSA) under the Clery Act, will satisfy their CSA reporting obligation by reporting incidents of sexual misconduct to the Deputy Title IX Coordinator for their campus or the University Title IX Coordinator, who will ensure that the appropriate non-identifiable information is conveyed to IUPD for Clery purposes.

If an individual has not yet shared information with a Responsible Employee regarding an incident of sexual misconduct, and the individual wishes to maintain anonymity, the Responsible Employee may refer them to a Confidential Employee or off-campus resource (see Confidential Employees section). However, once a Responsible Employee has knowledge of an incident of sexual misconduct, they must report according to this policy.

**Role of Law Enforcement**

Any individual who has experienced sexual violence is encouraged to contact IUPD or local law enforcement.

IUPD responds to emergency situations on the IU campuses, and typically communicates and works with the University Title IX Coordinator and Deputy Title IX Coordinators to assist in investigations and incident response, as well as to track statistics for Clery Act reporting.

Individuals with a possible criminal case who have not made their initial compliant via the police will be provided with information about how to file a complaint with law enforcement. Individuals may also request assistance from campus authorities in notifying law enforcement. Individuals may decide not to notify law enforcement authorities, and proceed with a University investigation.

A University investigation under the procedures outlined in this policy may be initiated and/or proceed simultaneously with a criminal case. The University will cooperate with law enforcement, and if requested by law enforcement, defer its fact gathering for a brief period during the evidence gathering stage of a criminal investigation. However, the University will not consider its investigation on hold pending a criminal prosecution or investigation and will continue to communicate with individuals and address the need for any interim measures regarding safety and well-being, and resume its own fact gathering as soon as permitted.

The determination by law enforcement whether or not to prosecute a respondent or the outcome of a criminal proceeding does not determine whether a violation of University policy has occurred. Records of University proceedings may be subpoenaed for a criminal prosecution.

In some instances, based on a heightened threat, or potential threat to the safety of the individual(s) involved, or the larger University community, university officials may determine it is necessary to make a third party complaint to law enforcement, despite the individual's decision not to do so. In such instances, the university will attempt to inform the individual prior to making a third party complaint.

Confidentiality and Privacy

*Confidential Employees*

Certain University employees – based on their own professional licensure and the nature of their role on campus – are available to speak with individuals about incidents of sexual misconduct and maintain the individual's desire for anonymity and absolute confidentiality. These confidential employees are exempt from the reporting requirements that apply to responsible employees (See Responsible Employees section). Individuals who desire anonymity in discussing and seeking assistance about sexual misconduct should contact and/or be referred to a confidential employee.

The University's confidential employees include, but are not limited to:

- • Licensed, professional mental health counselors working in that capacity, and those they supervise;
  - Health care professionals and staff located in on-campus health care centers; and
  - Any staff or specialists on a campus specifically designated as non-professional sexual assault advocates.

Note, faculty, staff and other employees who are licensed mental health workers or are licensed medical workers, but who are not working in that capacity, such as faculty members in psychology, social work, nursing, etc., are not confidential employees under this policy. The University shall identify and publicize confidential employees. Any Confidential Employee who is not a licensed mental health counselor or pastoral counselor serving in those roles, must provide non-identifying aggregate information regarding any Clery crime known to them directly to IUPD. See Stop Sexual Violence website at http://stopsexualviolence.iu.edu/employee/confidential.html for available confidential employees on each University campus.

*Privacy*

The University is committed to safeguarding the privacy of the parties in a manner consistent with the objective to effectively investigate and prevent incidents of sexual misconduct. In all cases, the University will share the parties' information and details of the allegation only with University officials, law enforcement personnel, and other individuals who have a legitimate administrative or legal reason to be so informed. Records will not be disclosed outside the University unless required by law or subpoena.

All individuals with knowledge of an alleged incident of sexual misconduct are expected to safeguard the privacy of those involved and should refrain from discussing the incident with anyone other than appropriate University officials and law enforcement.

*Requests for No-University Action*

If an individual discloses they have experienced an incident of sexual misconduct to a responsible employee, but requests that the University not investigate the particular incident, requests that no disciplinary action be taken, requests that the alleged perpetrator not be notified, or makes any similar request, the University will consider such request(s), and in general work to honor them. The responsible employee must still report the information to the designated officials, but also convey the individual's desired request(s). The University will weigh such request against its obligation to provide a safe, non-discriminatory environment for all students, including the individual who experienced the sexual misconduct. If the University determines that it is able to honor the individual's request(s), the individual should understand that the University's ability to meaningfully investigate the incident and/or respond appropriately may be limited. If, however, the University determines it must proceed under the circumstances, it will work to notify the individual in advance.

The University has designated the following individual(s) to evaluate an individual's request for no or limited action by the University in connection with a report of sexual misconduct: the Title IX and Deputy Title IX Coordinator(s), in consultation with relevant administrators on each campus and University legal counsel, where appropriate.

Investigation

Upon receipt of a report of sexual misconduct, the University will respond promptly to investigate and provide interim measures where appropriate. Procedures after a report of sexual misconduct will follow the steps listed below depending on whether the respondent is a student or employee. Employees who are students may be subject to procedures for students or employees, or both, at the sole option of the University. Investigation of the alleged misconduct shall be conducted by the University Title IX Coordinator, a Deputy Title IX Coordinator, a student affairs official (if alleged student misconduct), or another appropriate designee. Information for the investigation may be provided by the parties, witnesses identified by any party, or the University. Information related to prior sexual history of the parties will be prohibited, except in very limited circumstances regarding prior sexual history between the parties where such information may be relevant to the issue of consent. However, consent will not be assumed based solely on evidence of any prior sexual history.

Prior or subsequent conduct of the respondent may be considered in determining pattern, knowledge, intent, or motive. For example, evidence of a pattern of prohibited conduct by the respondent, either before or after the incident on question, regardless of whether there has been a prior finding of a Policy violation, may be deemed relevant to the determination of responsibility for the prohibited conduct under investigation. The determination of the relevance of pattern evidence will be based on an assessment of whether the previous or subsequent conduct was substantially similar to the conduct under investigation or indicated a pattern of similar prohibited conduct.

All investigators shall have the appropriate required and ongoing training on conducting sexual misconduct investigations, issues related to sexual misconduct and applicable University policies and procedures.

If the person identified as having engaged in sexual misconduct is not a student or employee of the University, the University shall take all appropriate measures to determine information regarding the individual, what occurred, whether another entity needs to be contacted to join in or assume an investigation (e.g. another institution of higher education), and to provide assistance in notifying the proper law enforcement authorities. The University will also provide interim and remedial measures, to the extent possible, to protect the reporting individual and eliminate any hostile environment. If upon investigation, it is determined that an individual is responsible for sexual misconduct and has a continuing relationship with the University, the University shall consider appropriate sanctions to prevent further harm and eliminate the hostile environment.

The University reserves the right to investigate circumstances that may involve sexual misconduct in situations where no complaint, formal or informal, has been filed. In limited circumstances, the University reserves the right to reopen a case previously considered closed in the event of new information or other appropriate circumstances.

Interim and Remedial Measures

Upon receiving a report or notice of alleged sexual misconduct, the University will provide appropriate and necessary interim measures to the complainant. These protective and supportive measures may vary depending on the individual's campus, the individual's needs and the specific circumstances, and could include no contact orders; assistance in changing academic, living, transportation, and/or work situations; counseling services; victim advocacy services; and assistance in obtaining protective orders. Interim measures may also include suspension of the respondent pending completion of the investigation, depending on the nature of the allegations.

Upon a finding of responsibility for sexual misconduct following the university's adjudication of the complaint, the university will take any additional and necessary remedial action with respect to the complainant and others members of the community, as well as the appropriate disciplinary action with respect to the person found responsible.

Certain support and protective measures and resources may also be available to an individual who has experienced sexual misconduct, regardless of whether they move forward with their complaint, depending on the individual's campus, the individual's needs and the specific circumstances.

**Summary of Rights of the Complainant and Respondent in Sexual Misconduct Procedures**

The rights of the parties to a sexual misconduct proceeding include:

- To be fully informed of University policies and procedures as well as the nature and extent of all alleged violations contained within the allegation.
- To be treated with respect by University officials.
- To have an advisor present during a University sexual misconduct proceeding, investigation meeting, or related meeting. The role of the advisor will be limited to being present only; they will not be allowed to speak during any University sexual misconduct proceeding, investigation meeting, or related meeting.
- Adequate, reliable, and impartial investigation and appropriate resolution of all reports of sexual misconduct.
- To be informed by the University of options to notify proper law enforcement authorities including on-campus and local police, and the option to be assisted by campus authorities in notifying proper law enforcement, if the individual chooses.
- To be notified of available counseling, mental health, academic, legal and other support services, both at the University and in the community.
- To have allegations investigated by individuals who are properly trained to investigate and resolve allegations of sexual misconduct.
- Equitable participation in the investigation and disciplinary process, including the opportunity to identify witnesses and other appropriate evidence.
- To the use of the preponderance of the evidence standard (more likely than not) in determining responsibility.
- The right to appeal as set forth in these procedures.

Procedures for Responding to Incidents Involving Allegations of Student Sexual Misconduct

The University will promptly respond to all reports of sexual misconduct alleged against a University student following the procedures outlined in this policy. Allegations of sexual misconduct by students will be addressed by the Sexual Misconduct Policy and the Code of Student Rights, Responsibilities and Conduct ("Student Code"). Students may be charged according to specific code violations under the Student Code, which will reference the Sexual Misconduct Policy.

Any individual reporting they have been a victim of sexual violence will be informed of how to, and provided assistance in, making a criminal complaint with the appropriate law enforcement agency. The pursuit of criminal charges may be in addition to (or instead of) pursuing cases through the University process. Individuals who identify as victims/survivors and all members of the Indiana University community are also encouraged to visit the Stop Sexual Violence website at http://stopsexualviolence.iu.edu for more information on reporting, campus resources and services available on their campus.

Throughout the process, the parties will have equal opportunities to present information, have advisors present, and pursue an appeal, if applicable. The University will have as a priority the interests of all parties involved, in regard to fairness, dignity, privacy, and due process.

The investigation and determination of responsibility will generally be concluded within 60 days of the report, absent special circumstances.

1. Investigation: Upon receipt of a report of sexual misconduct by a victim/survivor (hereinafter referred to as "complainant") or third party, and following an initial assessment to determine whether it falls within the scope of the Sexual Misconduct Policy and rises to the level of an allegation of sexual misconduct, the University will take immediate and appropriate steps to investigate the incident. If the complainant requests confidentiality or asks that the complaint not be pursued, the University will take all reasonable steps to investigate and respond to the incident consistent with those requests, keeping in mind that the University must weigh such requests against its obligation to provide a safe, non-discriminatory environment for all students, including the complainant.

a. If sexual misconduct proceedings are initiated, the Investigator(s) will notify the complainant and the student alleged to have engaged in sexual misconduct (hereinafter referred to as "respondent"). The respondent will be provided a date by which an appointment must be made to discuss the matter. The respondent shall be informed of the allegations made against them and shall be provided the opportunity to respond. The respondent is expected to participate in the investigation and all related procedures, including the Sexual Misconduct Hearing,

b. The investigation may include, but is not limited to, interviews with the complainant, the respondent, and other witnesses identified as having information relevant to the allegations made, as well as the examination of written statements by the parties, relevant documents, and other relevant information. Information for the investigation may be provided by complainants, respondents, witnesses identified by any party, or the University. Any person believed to have information relevant to an investigation may be contacted and requested to make an appointment to discuss the matter. The University shall determine what information and evidence will be included in the Investigation File.

c. Failure to comply with a request to make and/or keep an appointment related to an investigation may result in a disciplinary hold being placed on a student's account and/or the initiation of student conduct charges for failure to comply.

d. All members of the University are expected to cooperate with the investigative process. Failure to do so may result in disciplinary measures pursuant to applicable University policy and procedure.

e. Following their investigation, the Investigator will provide their Preliminary Investigation Report to the parties. At that time, the parties will be provided access to the Investigation File. The parties will be provided 10 calendar days to review the Preliminary Investigation Report and the Investigation File and provide any clarifying information to the Investigator. This period of 10 days will be the final opportunity for parties to submit any additional information to the Investigator.

f. At the conclusion of the 10-day period, the Investigator will review the information submitted by either party and determine whether and to what extent to incorporate such information into a Final Investigation Report.

g. At that time, the Investigator will determine the appropriate charge(s), if any, under the Sexual Misconduct Policy and the Student Code to be placed on respondent, and include the charge(s) in their Final Investigation Report. If the Investigator places a charge(s), the Final Investigation Report will be submitted to the hearing panel for the determination of responsibility, and the parties will be provided the Final Investigation Report and notified of next steps of the sexual misconduct process. If the Investigator determines that there is insufficient evidence to support placing a charge, the parties will be provided the Final Investigation Report and notified that no charges will be placed and the case has been closed.

2. Acceptance of Responsibility:

a. In cases where the respondent expresses a willingness to accept responsibility for any or all charges in a case, the respondent will be offered the opportunity to waive the right to a formal hearing as to the specific charge(s) and all related procedural guarantees, and agree to receive a sanction from the designated student affairs conduct officer. In such situations, the parties will each be provided the opportunity to submit a written statement to the conduct officer for consideration in determining appropriate sanctions.

b. The conduct officer shall consider only the parties' written statements regarding sanctions, the relevant facts from the investigation, and past conduct history of the respondent (if applicable). In such cases, the right to appeal will be limited to an appeal on the grounds that the sanction is grossly disproportionate to the violation(s) committed, in light of all relevant aggravating and mitigating factors, and in consideration of applicable university guidelines.

3. Alternative Resolution Options:

a. In appropriate cases, the University may pursue alternative resolution with the consent of all parties at any point in the investigation process. Alternative resolution options may include, but are not limited to, mediation, development action plans, voluntary resolutions, and/or appropriate sanctions.

b. Under any alternative resolution, the complainant will not be required to resolve the problem directly with the respondent, unless desired by the complainant. All parties must be notified of the right to end the alternative resolution process at any time, and begin the formal process. Mediation may not be used in cases involving

any sexual violence. The Investigator shall document the outcome of any alternative resolution and share with the parties.

4. Sexual Misconduct Hearing:
    a. A hearing panel will be assembled for the sexual misconduct hearing to make a determination of respondent's responsibility as to the specific charge(s) set forth in the Final Investigation Report.
    b. The hearing panel will be composed of three staff or faculty members of the University. Hearing panel members will be drawn from the pool of staff and faculty members who have completed the University's required annual training on issues related to sexual misconduct and University policies and procedures. At a minimum, at least one panel member shall be a student affairs administrator.
    c. The sexual misconduct hearing is closed. However, the complainant and respondent may each select one advisor of their choice and at their expense to accompany them at any point in the disciplinary process. Advisors are limited to an advisory role and may not participate or speak for the parties.
    d. Upon review of the Final Investigation Report, the hearing panel will determine witnesses who may be called, if any, to participate in the hearing.
    e. Procedures for a Sexual Misconduct Hearing
        i. The Chair of the hearing panel shall review the charge(s) placed against the respondent and the specific facts alleged. The respondent may, but need not, respond to allegations.
        ii. Both the complainant and the respondent will have equal opportunity to provide a statement to the hearing panel.
        iii. No one other than the hearing panel members, the complainant, and the respondent may pose questions during the hearing. The complainant and respondent may not directly question each other, but may submit questions to the Chair, to be asked of the other party. The Chair or other panel members will review questions prior to posing to the other party to prevent questioning that is not permitted under these proceedings.
        iv. The sexual misconduct hearing is recorded. Deliberations by the panel, following the hearing, are not recorded.
        v. If the respondent fails to appear at the sexual misconduct hearing, the hearing may proceed without their participation. The respondent may explain the failure to appear in writing to the University within two business days of the scheduled hearing. Written documentation supporting the cause of absence must be included. Within three business days after receiving the respondent's letter, the University will notify the respondent and the complainant whether the failure to appear was excused, and if so the hearing may be rescheduled. The failure to appear will only be excused due to extraordinary circumstances.
        vi. If the respondent failed to appear and such failure was not excused, the respondent's right to appeal the finding and any sanction(s) imposed will be automatically forfeited, and the outcome reached in absentia will go into effect. The respondent shall not lose their right to appeal in the event the hearing panel's finding includes a sanction of expulsion from University housing, suspension from the University, or expulsion from the University.
    f. Decision & Sanctions
        i. At the conclusion of a hearing, the panel shall deliberate without the parties present to determine responsibility for the specific charge(s) based on the evidence, and sanctions if applicable.
        ii. If, after deliberations, the hearing panel determines that the information contained in the Final Investigative Report and gathered during the hearing, does not support by a preponderance of the evidence (more likely than not) that the respondent is responsible for a violation of the Sexual Misconduct Policy and the Student Code, the hearing panel will notify both the respondent and the complainant by means of a written notice. The complainant and/or respondent may request an appeal (see section 5a.).
        iii. If, after deliberations, the hearing panel determines that the information contained in the Final Investigative Report and gathered during the hearing, does support by a preponderance of the evidence

(more likely than not) that the respondent is responsible for a violation of the Sexual Misconduct Policy and the Student Code, the hearing panel will notify both the respondent and the complainant and will assign appropriate sanctions by means of a written notice. The respondent and/or the complainant may request an appeal (see section 5a.).

iv. Possible sanctions for cases in which students are found in violation of Sexual Misconduct Policy and the Student Code for acts of sexual misconduct include, but are not limited to formal warnings, behavioral assessment and/or counseling, required educational training, disciplinary probation, suspension, and/or permanent expulsion.

5. Appeal: The respondent or the complainant may appeal the decision of the sexual misconduct hearing panel to the Senior Student Affairs Administrator on the respective campus, or their designee. To initiate an appeal, respondent/complainant must send written notice of appeal to the designated official. The written notice must include the basis for seeking the appeal and include information to support such basis (See Section 5b.)

   a. Timing: The notice of appeal must be filed no later than five calendar days after the date the written decision of the sexual misconduct hearing panel is sent. If an appeal is submitted by either party, the underlying decision and any corresponding sanction will be held in abeyance until final notice of the appeal outcome. During this time, any interim measures in place will remain in effect (e.g., no contact order, no trespass). If no written request for an appeal is received by the University within the time specified, the decision of the hearing panel and any sanction(s) imposed will be final and in effect.

   b. Basis for Appeal: The Senior Student Affairs Administrator will have the sole discretion in determining whether the basis for appeal has been met and whether the appeal can move forward. An appeal must be based on one of the following criteria:

      i. Significant procedural error that reasonably would have affected the outcome of the student's case.

      ii. The sanction imposed is grossly disproportionate to the violation(s) committed, in light of all relevant aggravating and mitigating factors, and in consideration of applicable University guidelines.

   c. Decision and Sanction: If the basis for appeal has been met, the Senior Student Affairs Administrator will review the written appeal and the pertinent part of the sexual misconduct hearing panel record only. The Senior Student Affairs Administrator will not consider new evidence or information that is not a part of that record. The Senior Student Affairs Administrator must render a decision within 10 calendar days of receipt of the appeal and may take any of the following actions:

      i. Affirm the original decision regarding responsibility.

      ii. Affirm the original decision concerning the disciplinary sanction/s to be imposed.

      iii. Set aside the original decision regarding responsibility and impose a new decision.

      iv. Set aside the original decision regarding responsibility and order that a new sexual misconduct hearing be held before a new hearing panel.

      v. Set aside the original decision concerning the disciplinary sanction/s to be imposed and impose a different sanction or set of sanctions.

   d. The Senior Student Affairs Administrator will notify the respondent and the complainant, in writing, of their decision and will initiate the necessary procedures to effectuate the decision.

   e. The decision of the Senior Student Affairs Administrator or their designee is final and there will be no further appeals.

6. Notice: The complainant and the respondent will be provided written notice of the outcome of the sexual misconduct hearing, the appeals process, and the appeal decision, if applicable. Written notice may be provided electronically through Indiana University email accounts.

7. NOTE:

- Just as students with disabilities may be eligible for accommodations in their classes, accommodations may be available for these procedures as well. Students with disabilities requesting accommodations and services under these procedures will need to present a current accommodation verification letter from their campus disability services office before accommodations can be considered and provided.

- In appropriate circumstances, the University may utilize language translation services to assist in the investigation and/or hearing proceedings.
- In the event there is a civil protective order in place that precludes the university from conducting a hearing as outlined in the student procedures, the university may use an alternative process that will be communicated to both parties.

*Further information and definitions of key terms can be found in the University Sexual Misconduct Policy.*

<u>Procedures for Responding to Incidents Involving Allegations of Faculty or Staff Sexual Misconduct</u>

The University will promptly respond to all complaints of Sexual Misconduct alleged against a University employee. Any individual reporting that they have been a victim of sexual violence will be informed of how to, and provided assistance in, making a criminal complaint with the appropriate law enforcement agency. Individuals who identify as victims/survivors and all members of the Indiana University community are also encouraged to visit the Stop Sexual Violence website at http://stopsexualviolence.iu.edu for more information on reporting, campus resources and services available on their campus.

All parties will have equal opportunities to present information, have advisors present, and pursue an appeal, if applicable. All procedures, excluding any appeal, should be completed within 60 days, absent any special circumstances.

Throughout this process, the University will have as a priority, the interests of all parties involved, in regard to fairness, dignity, privacy, and due process. Students reporting sexual misconduct against an employee will be provided interim and remedial measures as described in this policy, where appropriate and necessary.

For the purpose of these procedures, relevant officials with key responsibilities are:

**Investigator** – The Deputy Title IX Coordinator(s) for the respective campus, or an appropriate designee, will conduct fact-finding as the Investigator and may coordinate with other offices such as human resources, academic affairs, and student affairs.

**Decisional Official (DO)** – The DO will issue the decision determining responsibility and assigning appropriate sanctions, if applicable. The DO will be as follows:

1. For complaints against staff employees, including temporary (hourly), the DO will be the university employee relations director or their designee.
2. For complaints against faculty and academic employees, the DO will be the Vice Provost/Vice Chancellor for Academic Affairs of the respective campus.
3. For complaints against a Dean, a Vice Provost, or a Vice Chancellor, the DO will be the Provost/Chancellor of the respective campus.
4. For complaints against a University Vice President, a Provost, a Chancellor, or equivalent, the DO will be the President.
5. For complaints against the President, the DO will be the Board of Trustees.

In the event the DO is not available, the university shall designate another university official.

**Appellate Official (AO)** – The AO may review the action of the DO on each campus, following appeal by either party. The Appellate Official will be as follows:

1. For an appeal in a complaint against staff employees, including temporary (hourly), the Associate Vice President of University Human Resources.
2. For an appeal in a complaint against faculty or academic employees, the Provost/Chancellor of the respective campus.
3. For an appeal in a complaint against a Dean, a Vice Provost, or a Vice Chancellor, the President.

4. For an appeal in a complaint against a Vice President, a Provost, a Chancellor, or equivalent, the Board of Trustees.

**Faculty Board of Review (FBR)** – A Faculty Board of Review is constituted on each campus. In faculty cases, following the decision of the AO, the faculty member may request a review by the campus FBR.

All relevant officials will receive University training on issues related to sexual misconduct and be familiar with University policies and procedures. The University Title IX Coordinator shall be informed of each complaint and be available to all relevant officials for consultation during this process.

**Complaint**

*Initial Assessment:* Upon receipt of a report alleging that a faculty or staff member has engaged in sexual misconduct, an Investigator will conduct an initial assessment to determine whether it falls within the scope of the Sexual Misconduct Policy, and whether it rises to the level of an allegation of sexual misconduct. If a complaint raises allegations that are outside the scope of the Sexual Misconduct Policy, but may violate other University policy(ies), the Investigator will refer the complaint to the appropriate University office.

In the event the Investigator determines not to pursue an investigation under this Policy, that decision may be appealed by either party to the DO, requesting a review of the decision not to proceed in an investigation. Upon review, the DO may uphold that decision or order an Investigation to proceed.

The process that follows shall apply when the Investigator determines that the allegations fall within the scope of this policy.

*Alternative Resolution Options:* In appropriate cases, the University may pursue alternative resolution with the consent of all parties at any point in the investigation process. These resolution options may include, but are not limited to, mediation, development of an action plan, and voluntary resolutions. Under alternative resolution, the complainant will not be required to resolve the problem directly with the respondent, unless desired by the complainant. All parties must be notified of the right to end the alternative resolution process at any time, and begin the formal process. Face-to-face mediation may not be used in cases involving any sexual violence or where the complaint is made against an employee with a position of authority over the complainant. The Investigator shall document the outcome of any alternative resolution and share with the University Title IX Coordinator and the DO.

*Interim Action*: If, upon the receipt of a complaint, the University Title IX Coordinator and/or the Deputy Title IX Coordinator(s) for the respective campus, or their designee, determines a need for immediate interim action, e.g. removal, reassignment, administrative leave, or suspension, they shall consult with the appropriate university officials, which may include the DO. The DO may administer such interim action at any point in this process pending final outcome.

**Investigation**

If an investigation is initiated, the Investigator will conduct fact-finding as to the allegations made against the respondent employee.

The investigation may include, but is not limited to, interviews with the complainant, the respondent, and other witnesses identified as having information relevant to the allegations made, as well as the examination of written statements by the parties, relevant documents, and other relevant information. Information for the investigation may be provided by complainant, respondent, witnesses identified by any party, or the University. The Investigator shall ensure that the respondent has been informed of all allegations raised and the name of the complainant(s), and is provided the opportunity to respond.

All members of the University are expected to cooperate fully with the investigative process. Interference with the investigation may result in disciplinary measures pursuant to applicable University policy and procedure.

**Report of Investigation**

The Investigator will create a report at the conclusion of their investigation setting forth:

1. the specific allegation(s);
2. the respondent's response to the allegation(s);

3. a summary of the relevant information gathered from the parties, witnesses and other sources;
4. an analysis of the information;
5. a recommendation as to whether the respondent is responsible or not responsible for the alleged violation(s) of the Sexual Misconduct Policy, using a preponderance of the evidence standard (more likely than not); and
6. a recommendation as to appropriate sanctions, if any, as set forth below.

The report will be forwarded to the DO. The parties shall also be provided access to the report, and shall be provided 10 calendar days to submit any comments to the DO in writing.

**Finding and Decision**
Upon receiving the Investigator's report, and any comments received from either party, the DO shall issue a finding. The DO may consult with the Investigator concerning the investigation and recommendations. If the DO wishes further consultation with the parties, the Investigator will facilitate consultations to ensure equal opportunities for the parties to meet with the DO.

The DO will issue one of the following findings, using a preponderance of the evidence standard:

Finding of "No Violation" of the University's Sexual Misconduct Policy:
If there is a determination that the behavior alleged and investigated did not violate the Sexual Misconduct Policy, the DO shall provide the parties written notice of the finding. In the event the investigation reveals that the employee may have violated a different University policy, the DO may address any such potential violation through other applicable University policies. Documentation regarding a finding of "No Violation" shall be maintained with the respective Deputy Title IX Coordinator's office, and not in the employee's personnel file.

Finding of a "Violation" of the University's Sexual Misconduct Policy:
If there is a determination that the behavior alleged and investigated was in violation of the Sexual Misconduct Policy, the DO shall issue the finding and sanction(s) (based on the level of sanctions set forth below).

The DO shall provide the parties written notice of the finding and any sanctions if applicable.

**Sanctions**
Sanctions for a violation of the University's Sexual Misconduct Policy include the following:

1. Level One Sanctions include sanctions that do not directly modify job duties or actual salary, such as informal discussions, additional training, periodic review, letter to personnel file (other than to promotion and tenure dossier which is included in Level Two Sanctions below). Level One Sanctions shall not be appropriate in the event the respondent was found responsible for sexual assault or other sexual violence.
2. Level Two Sanctions include sanctions that directly modify job duties, salary or job status, including affecting compensation, consideration in tenure or promotion decisions, suspension and termination.

When determining the appropriate sanctions, consideration shall be given to the nature and severity of the behavior and the existence of any prior incidents or violations.

**Appeals**
*Appeals to Appellate Officer*
Following a finding of "No Violation" either party may request an appeal to the Appellate Officer on the basis of:

1. Significant procedural error that reasonably would have affected the outcome.
2. Significant bias in the process.

Following a finding of "Violation" and Level One Sanction: any party may request an appeal to the Appellate Officer on the basis of:

1. Significant procedural error that reasonably would have affected the outcome.
2. Significant bias in the process.

Following a finding of "Violation" and Level Two Sanction: any party may request an appeal to the Appellate Officer on the basis of:

1. Significant procedural error that reasonably would have affected the outcome;
2. Significant bias in the process;
3. The finding of responsibility is not supported by the evidence in the Report of Investigation; and/or
4. The appropriateness of the sanctions.

A request for appeal must be submitted in writing to the Appellate Officer within 10 calendar days of receiving the DO's decision. The request must set forth the basis for seeking an appeal, and include information to support such basis(es). If an appeal is requested, all concerned parties will be notified.

The AO shall first determine whether the basis of appeal has been met, and if so, shall review the findings, and any applicable sanctions, in making a decision.

The AO shall make a final determination within 10 calendar days of the receipt of any appeal, indicating one of the following:

1. Affirming the DO's original finding(s).
2. Setting aside the DO's original finding(s) and imposing a new finding and/or sanctions.
3. Setting aside the DO's original finding(s) and ordering a new investigation (this option will generally be reserved for cases where significant procedural error has been identified to have affected the outcome).

To the extent possible, the parties will be notified simultaneously in writing of the final decision following an appeal.

*Request for Faculty Board of Review following the AO's Determination*
In cases involving a faculty member as a party, the faculty member may submit a request for review by the Faculty Board of Review (FBR) following the determination of the AO. The request for review should be made according to the specific campus FBR policy, and campus FBR procedures will apply except as modified by the provisions below.

A. Following a finding of "No Violation" the faculty member may request a FBR on the following two bases, and the FBR may choose to either accept or decline the request for review:

1. Significant procedural error that reasonably would have affected the outcome; and/or
2. Significant bias in the process.

B. Following a finding of "Violation" and Level One Sanction: the faculty member may request a FBR on the following two bases, and the FBR may choose to either accept or decline the request for review:

1. Significant procedural error that reasonably would have affected the outcome; and/or
2. Significant bias in the process.

C. Following a finding of "Violation" and Level Two Sanction: the faculty member may request a FBR on the following four bases, and the FBR shall grant the request for review:

1. Significant procedural error that reasonably would have affected the outcome;
2. Significant bias in the process;
3. The finding of responsibility is not supported by the evidence in the Report of Investigation; and/or
4. The appropriateness of the sanctions.

The request for a FBR must set forth the bases for seeking review and be submitted in writing within 10 calendar days of receiving the AO's determination. For good cause shown, and bearing in mind the need for timely resolution, the timeframes set forth within these procedures may be extended. If a request for a FBR is submitted, the FBR shall notify the other party(ies), as well as the DO and the AO.

The FBR will only receive the Report of the Investigation; the written findings of the DO along with comments submitted by any party; the written findings of the AO; and any sanctions. The FBR may not conduct new fact-finding. The FBR may seek training and additional information from the Title IX Coordinator.

Throughout the Faculty Board of Review process, hearing members and participants shall ensure that the privacy of the matter and the parties is upheld. If a hearing is held, it shall be closed to the public to protect the privacy of all parties. In addition to faculty members serving on the Board of Review hearing panel, others present during a hearing may include the party requesting review and their advisor, the other party(ies) named in the report and their advisor, the University Title IX Coordinator, and other University officials necessary to the proceedings. No witnesses will be allowed in the FBR. The faculty member requesting review, the other party(ies) named in the report, and designated university officials have the right to present a statement to the FBR in writing or orally, either personally or through an advisor. If any party elects to be present and make a statement, the FBR may pose questions related to their statement. Advisors will generally not be allowed to participate in the FBR hearing by speaking to the FBR or asking questions, other than in exceptional circumstances with permission of the FBR or for the purpose of reading a statement prepared by the party they are advising.

The FBR must be concluded promptly, and gennerally within 60 days of the request, absent special circumstances. After review, the FBR may recommend one of the following to the AO:

1. Affirm the AO's determination.
2. Recommend an alternative finding and/or sanction.
3. Recommend that the determination be set aside and a new investigation be conducted (this option will generally be reserved for cases where significant procedural error has been identified to have affected the outcome).

To the extent possible, the parties will be notified simultaneously in writing of the FBR's recommendation to the AO.

Upon receipt of the FBR's recommendation, along with any materials considered by the FBR, the campus AO will make a final determination within 10 calendar days, indicating one of the following:

1. Affirming the prior determination on appeal.
2. Setting aside the prior determination on appeal and imposing a new finding and/or sanctions.
3. Setting aside the prior determination on appeal and ordering a new investigation (this option will generally be reserved for cases where significant procedural error has been identified to have affected the outcome).

If the FBR recommends that the AO's prior determination be modified, but the AO affirms the prior determination, the final determination shall be made by the President.

To the extent possible, the parties will be notified simultaneously in writing of the AO's final decision. This concludes the appeal process.

**Non-Adversarial Process:**

Adversarial behavior that includes confrontation and cross-examination by the parties, or active advocacy by attorneys or other advocates, is neither appropriate nor permitted during any phase of these processes.

*Further information and definitions of key terms can be found in the University Sexual Misconduct Policy.*

## Definitions

For purposes of addressing complaints of sexual misconduct against or by University students and employees, the following uniform definitions shall be used by the University:

**Advisor** - means any person, who may assist, support, guide and advise the respondent or complainant during the investigation, conduct proceedings, and/or related meetings. Advisors are not permitted to actively participate

or speak during the investigation, proceedings and related meetings. In certain circumstances where a party may be unable to speak on their own behalf, an advisor may present a statement prepared by the party.

**Bodily injury** - shall mean physical pain, illness, or any impairment of physical condition.

**Campus security authority (CSA)** - a term used in the Clery Act to describe someone who has significant responsibility for student and campus activities. The Clery Act (34 CFR 668.46) defines a CSA as:

- A campus police department or a campus security department of an institution.
- Any individual or individuals who have responsibility for campus security but who do not constitute a campus police department or a campus security department such as an individual who is responsible for monitoring entrance into institutional property.
- Any individual or organization specified in an institution's statement of campus security policy as an individual or organization to which students and employees should report criminal offenses.
- An official of an institution who has significant responsibility for student and campus activities, including, but not limited to, student housing, student discipline, and campus judicial proceedings.

Pastoral and professional counselors are not considered a campus security authority when acting in their roles as a pastoral or professional counselor.

**Clery Act** – refers to the The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, (20 U.S.C. section 1092(f)), a federal law that requires institutions such as IU to collect and publish statistics for certain crimes reported to have occurred on IU's "Clery Geography" (i.e., occurring on campus, on public property within or immediately adjacent to campus, and on other noncampus IU property), for the purpose of informing current and prospective students and employees. Each IU campus publishes an Annual Security Report under the Clery Act, which contains these crime statistics as well as campus specific information on resources, campus emergency responses, safety and security policies, and disciplinary procedures. These crime statistics include, but are not limited to, domestic violence, dating violence, sexual assault, and stalking. Clery also requires "timely warnings" be issued to the campus community for crimes occurring on Clery Geography that are considered a serious or continuing threat to students or employees. Under Clery, any good-faith report of a crime occurring on Clery Geography must be included in the statistical data.

**Complainant** - refers to an individual who reports experiencing sexual misconduct committed by a member of the University community, and is named in a complaint of sexual misconduct under this policy and procedures. The University may serve as the Complainant when the alleged victim does not wish to participate and the University has determined it is necessary to move forward under the applicable procedures.

**Confidential Employees** - certain University employees – based on their own professional licensure and the nature of their role on campus – are available to speak with individuals about incidents of sexual misconduct and maintain the individual's desire for anonymity and absolute confidentiality. These confidential employees are exempt from the reporting requirements that apply to responsible employees. Individuals who desire anonymity in seeking assistance about sexual misconduct should be referred to a confidential employee.

The University's confidential employees include, but are not limited to:

- Licensed, professional mental health counselors working in that capacity, and those they supervise;
- Health care professionals and staff located in on-campus health care centers; and
- Any staff or specialists on a campus specifically designated as non-professional sexual assault advocates.

**Consent** - (see above)

**Dating violence** - violence or the threat of violence committed by any person who is or has been in a relationship of a romantic or intimate nature. The existence of such a relationship will be determined based on a consideration of the length of the relationship, the type of relationship, and the frequency of interactions between the persons involved in the relationship.

**Domestic violence** - violence or the threat of violence by a person against a another person who:

(1) is or was a spouse of;
(2) is or was living as if a spouse of;
(3) has a child in common with;
(4) is a minor subject to the control of; or
(5) is an incapacitated individual under the guardianship or otherwise subject to the control of the other person regardless of whether the act or threat has been reported to a law enforcement agency or results in a criminal prosecution.

**Employee** - this term shall be synonymous with and include all employees working for Indiana University – academic employees, including faculty, and staff, including full-time, part-time, and temporary (hourly) employees at any University campus or working on behalf of the University.

**Finding of Responsibility** - means that it is more likely than not that the Respondent has committed one or more acts of sexual misconduct. A preponderance of the evidence standard must be used when determining responsibility for sexual misconduct.

**Force or threat of force** - (a) the use of physical force which overcomes the person's resistance or (b) the threat of physical force, express or implied, against the person or a third party that places the person in fear of death or in fear of serious personal injury to the person or a third party where the person reasonably believes that the actor has the present or future ability to execute the threat.

**Hostile environment** - when conduct is sufficiently severe, pervasive or persistent to limit or deny a person's ability to participate in or benefit from the University's educational programs or affects employment.

**Indiana University Property** – buildings, grounds, and land that are owned by Indiana University or controlled by Indiana University via leases or other formal contractual arrangements to house ongoing IU operations.

**Interim and Remedial Measures** - procedures for incidents involving students and employees will include providing appropriate and necessary interim measures pending the result of an investigation and remedial measures that will be long-term and continuous. Interim and remedial measures may vary depending on the individual's campus, the individual's needs and the specific circumstances. These measures could include no contact orders, assistance in changing academic, living, transportation, and/or work situations; counseling services; victim advocacy services; and assistance in obtaining protective orders. Interim measures may also include suspension of the respondent pending completion of the investigation.

**Investigator** - a University official authorized to investigate reports of sexual misconduct under the procedures outlined in this policy.

**Notice** - To the extent possible, the parties shall be provided simultaneous written notice of the outcome of the sexual misconduct proceeding, the appeals process, and the appeal decision, if applicable. Written notice may be provided electronically through Indiana University email accounts.

**Member of the University community** - includes any individual who is a student, staff, faculty member, University official, or any other individual employed by, or acting on behalf of, the University. An individual's status in a particular situation shall be determined by the Investigator or Title IX Coordinator.

**Rape** - penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim. (FBI definition.)

**Respondent** - is any member of the University community alleged to have engaged in sexual misconduct as defined in this policy.

**Responsible Employee** - Pursuant to Title IX, a "responsible employee" includes those University employees who have the authority to redress sexual misconduct, who have the duty to report incidents of sexual misconduct, or who a student could reasonably believe has this authority or duty.

The University's responsible employees include, but are not limited to:

- All instructors, including full-time professors, adjuncts, lecturers, associate instructors (AIs), teaching assistants (TAs), and any others who offer classroom instruction or office hours to students;
- All advisors;
- All coaches, and other athletic staff that interact directly with students;
- All student affairs administrators;
- All residential hall staff;
- All employees who work in offices that interface with students; and
- All supervisors and University officials.

**Retaliation** - Protections against retaliation are critical to reducing the prevalence of sexual misconduct within the University community. Retaliation against anyone who has reported an incident of sexual misconduct, provided information, or participated in procedures or an investigation into a report of sexual misconduct, is prohibited by the University and will not be tolerated. Acts of retaliation include intimidation, threats, and/or harassment, whether physical or communicated verbally or via written communication (including the use of e-mail, texts and social media), as well as adverse changes in work or academic environments or other adverse actions or threats. The University will take steps to prevent retaliation, and will impose sanctions on anyone or any group who is found to have engaged in retaliation in violation of this policy. Concerns about potential retaliation in connection with a report of sexual misconduct should be reported to a Deputy Title IX Coordinator or the University Title IX Coordinator.

**Sexual assault** - (see above)

**Sexual exploitation** - manner that extends the bounds of consensual sexual activity with or without the knowledge of the other individual for any purpose, including sexual gratification, financial gain, personal benefit, or any other non-legitimate purpose. Examples of sexual exploitation include but are not limited to:

- Non-consensual streaming, audio- or video-recording, photographing, or transmitting intimate or sexual utterances, sounds, or images without consent of all parties involved;
- Allowing others to view sexual acts (whether in person or via a video camera or other recording device) without the consent of all parties involved;
- Engaging in any form of voyeurism (e.g., “peeping”);
- Prostituting another individual;
- Compelling another individual to touch his or her own or another person’s (third party) intimate parts without consent;
- Knowingly exposing another individual to a sexually transmitted disease or virus without that individual’s knowledge; and
- Inducing incapacitation for the purpose of making another person vulnerable to non-consensual sexual activity.

**Sexual harassment** - (see above)

**Sexual misconduct** - includes sexual harassment, sexual assault, other forms of sexual violence, dating violence, domestic violence, sexual exploitation and stalking. For purposes of this policy, sex or gender based discrimination is considered sexual misconduct.

**Sexual penetration** - means sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse or any intrusion, however slight, of any part of the actor’s or person’s body or any object manipulated by the actor into the genital or anal openings of the person’s body.

**Sexual violence** - refers to physical sexual acts perpetrated against a person’s will or where a person is incapable of giving consent due to use of drugs or alcohol, or due to an intellectual or other disability. Sexual violence includes rape and sexual assault.

**Stalking** - a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

**Student** - as defined by the Code of Student Rights, Responsibilities, and Conduct (http://studentcode.iu.edu/appendices/definitions.html)

**StudentAffairsOfficer** - individuals authorized by the University and the campus chancellor or provost to be responsible for the administration of the Student Code of Rights and Responsibilities on a campus, and in certain circumstances includes his or her designee.

**Title VII** - refers to Title VII of the Civil Rights Act of 1964 (42 U.S.C. section 2000e), which prohibits employment discrimination based on race, color, religion, sex and national origin.

**Title IX** - refers to the portion of the federal Education Amendments of 1972 (20 U.S.C. section 1681-1688), which provides in part that “no person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance”.

**TitleIX Coordinator** - the individual designated by the University to coordinate University’s compliance with Title IX and respond to allegations of sexual misconduct by members of the University community. In some circumstances this can include his or her designee.

**University** - means Indiana University.

## Sanctions

Violations of this policy by an individual will be dealt with in accordance with applicable University policies and procedures, referenced above, which may include disciplinary actions up to and including termination from the university. See the procedures outlined above for possible sanctions that may be imposed to address violations of this policy. When determining appropriate sanctions, the University may consider prior findings of misconduct. Violations of law will be addressed by law enforcement and may result in criminal penalties.

## Additional Contacts

Title IX Coordinator

Emily Springston
University Director of Institutional Equity & Title IX Coordinator
400 E. 7th Street
Poplars 833
Bloomington, IN 47405
812-855-4889
titleix@iu.edu

Title IX Deputy Coordinators

| | | | |
|---|---|---|---|
| IUB | Emily Springston, University Director of Institutional Equity & Title IX Coordinator | 812-855-7559 | titleix@iu.edu |
| IUB | Libby Spotts, Director, Office of Student Conduct | 812-855-5419 | ethics@indiana.edu |
| IUPUI | Anne Mitchell, Director, Office of Equal Opportunity | 317-278-9230 | amitch29@iupui.edu |

| | | | |
|---|---|---|---|
| IUPUI | Brian Tomlinson, Associate Dean and Director of Student Conduct | 317-274-4431 | betomlin@iupui.edu |
| IUPUC | Bailey Moss, Coordinator of Leadership and Community Service | 812-375-7504 | bkmoss@iupuc.edu |
| IUPUC | Anne Mitchell, Director, Office of Equal Opportunity | 317-278-9230 | amitch29@iupui.edu |
| IUE | Tracy Amyx, Director of Affirmative Action/EEOC Officer | 765-973-8402 | trramyx@iue.edu |
| IUK | Sarah Sarber, Chief of Staff/Deputy Title IX Coordinator | 765-455-9204 | shawkins@iuk.edu |
| IUN | Aneesah Ali, Director, Office of Equal Opportunity and Affirmative Action Programs | 219-980-6853 | aneeali@iun.edu |
| IUS | Darlene P. Young, Director, Office of Equity and Diversity | 812-941-2306 | eqdiv@ius.edu |
| IUSB | Marty McCampbell, Director of Diversity and Affirmative Action | 574-520-4524 | mmccampb@iusb.edu |

<u>IU Police Departments</u>

| | | | |
|---|---|---|---|
| Superintendent of Public Safety | Benjamin Hunter | 812-855-4296 | bdhunter@iu.edu |
| IU Office of Public Safety | Richard Erny | 317-274-4230 | rcerny@iu.edu |
| IU Office of Public Safety | Bailey Brand | 812-855-5942 | bmbrand@iu.edu |
| IUB Police | Laury Flint, Chief of Police | 812-855-7621 | lbarthol@indiana.edu |
| IUPUI Police | Doug Johnson, Chief of Police | 317-274-4860 | johnsodo@iu.edu |
| IUE Police | Scott Dunning, Chief of Police | 765-973-8435 | sdunning@iue.edu |
| IUK Police | Thomas Remender, Chief of Police | 765-455-9432 | tremende@iu.edu |
| IUN Police | Wayne James, Chief of Police; | 219-980-7222 | wljames@iun.edu |

| | | | |
|---|---|---|---|
| IUS Police | Stephen Miller, Interim Chief of Police & Safety | 812-941-2400 | sfmiller@ius.edu |
| IUSB Police | Kurt Matz, Chief of Police | 574-520-5522 | kumatz@iusb.edu |
| IPFW Police | Stephen Kimbrough, Chief of Police | 260-481-0739 | kimbrous@ipfw.edu |

Campus Student Affairs

| | | | |
|---|---|---|---|
| IUB | Lori Reesor, Vice Provost for Student Affairs and Dean of Students | 812-855-8188 | lreesor@iu.edu |
| IUPUI | Eric Weldy, Vice Chancellor Division of Student Affairs | 317-274-3290 | eweldy@iupui.edu |
| IUE | Carrie Reisner, Interim Dean of Students | 765-973-8404 | hellerc@iue.edu |
| IUK | Todd Gambill, Vice Chancellor for Student Affairs and Enrollment Management | 765-455-9214 | tgambill@iuk.edu |
| IUN | Alexis Montevirgen, Vice Chancellor for Student Affairs | 219-980-6586 | nwstuaff@iun.edu |
| IUS | Amanda Stonecipher, Interim Vice Chancellor for Retention & Student Services | 812-941-2115 | agstone@ius.edu |
| IUSB | Monica Porter, Vice Chancellor for Student Engagement & Success | 574-520-4252 | moport@iusb.edu |

Campus Academic Affairs

| | | | |
|---|---|---|---|
| IUB | Eliza Pavalko, Vice Provost for Faculty and Academic Affairs | 812-855-2809 | vpfaa@indiana.edu |
| IUPUI | Kathy Johnson, Executive Vice Chancellor and Chief Academic Officer | 317-274-4500 | ofaa@iupui.edu |
| IUE | Michelle Malott, Executive Vice Chancellor, Academic Affairs | 765-973-8320 | mimalott@iue.edu |
| IUK | Mark Canada, Vice Chancellor for Academic Affairs | 765-453-2227 | marcanad@iuk.edu |

| | | | |
|---|---|---|---|
| IUN | Vicki Román-Lagunas, Executive Vice Chancellor for Academic Affairs | 219-980-6761 | viroman@iun.edu |
| IUS | Uric Dufrene, Executive Vice Chancellor for Academic Affairs | 812-941-2208 | tandrews@ius.edu |
| IUSB | Jann L. Joseph,Executive Vice Chancellor for Academic Affairs | 574-520-4183 | jljoseph@iusb.edu |
| IPFW | Carl N. Drummond, Vice Chancellor for Academic Affairs | 260-481-6116 | wagenfej@ipfw.edu |

Campus Human Resources Offices

| | | | |
|---|---|---|---|
| IUB | http://hr.iu.edu/ | 812-855-2172 | uhrs@indiana.edu |
| IUPUI | http://www.hra.iupui.edu/ | 317-274-7617 | hra@iupui.edu |
| IUE | http://www.iue.edu/hr/index.php | 765-973-8487 | iuehr@iue.edu |
| IUK | http://iuk.edu/hr/index.php | 765-455-9226 | gvanalst@iuk.edu |
| IUN | http://www.iun.edu/hr/ | 219-980-6775 | hrnw@iun.edu |
| IUS | http://www.ius.edu/hr/index.php | 812-941-2356 | HR@ius.edu |
| IUSB | https://www.iusb.edu/human-resources/ | 574-520-4358 | japoelvo@iusb.edu |

Office for Civil Rights

U.S. Department of Education
Office for Civil Rights
Lyndon Baines Johnson Department of Education Bldg
400 Maryland Avenue, SW
Washington, DC 20202-1100

Telephone: 800-421-3481
FAX: 202-453-6012; TDD: 800-877-8339
Email: OCR@ed.gov
Website: http://www2.ed.gov/about/offices/list/ocr/index.html

## History

This policy was established in 2015. It incorporates and supercedes the Indiana University Policy Against Sexual Harassment which was effective in 1998.

Approved by the University Faculty Council, February 24, 2015 by the attached resolution.

Approved by University President, Michael McRobbie, March 1, 2015.

Revisions to policy approved by UFC and University President, August 25, 2016.

Revision to policy approved by UFC November 29, 2016 and University President, December 22, 2016. Effective date January 1, 2017.

Revisions to policy approved by UFC November 28, 2017; approved to be made effective on January 1, 2018 by University President.

Previous Versions:

Effective Dates:

03/01/2015 - 08/25/2016

08/25/2016 - 01/01/2017

01/01/2017 - 01/01/2018

## Related Information

IU's Stop Sexual Violence Website www.stopsexualviolence.iu.edu
Non-Discrimination/Equal Opportunity/Affirmative Action policy
Code of Student Rights and Responsibilities
Code of Academic Ethics
Programs Involving Children policy
Annual Security & Fire Safety Reports (including Clery Crime Statistics)