

# Serving on Sexual Misconduct Hearing Panels



EXHIBIT 7
Doe v TWP-DLP IU
12/19/2018
Reported by:
Amy Doman, CSR, RPR, CRR

**Libby Spotts**
Associate Dean, Deputy Title IX Coordinator
Office of Student Conduct
ehspotts@indiana.edu

**Sally Ronald**
Associate Director, Office of Institutional Equity
sronald@iu.edu



IT'S ON US

Office of Student
Welfare & Title IX

IU0000708



# Student Welfare Statement

To address the unacceptable incidences of sexual assault and similar crimes on U.S. college campuses, Indiana University is committed to:

– Taking vigorous steps to prevent sexual assault and similar crimes through education and training, including education on the effects of alcohol on consent.

– Helping build in our community a robust culture that rejects such conduct and associated behaviors.

– Encouraging bystanders to intervene to prevent a sexual assault from occurring or to report such crimes to university officials or local authorities, and to fully account for such reports under federal law.

– Supporting victims with full information about available resources, assisting victims in accessing resources, and at all times exhibiting personal care and concern to victims.

– *Investigating thoroughly and objectively* all reports of sexual assault and other crimes, and cooperating fully with local law enforcement and prosecutors.

– Conducting university proceedings arising from sexual assault and other crimes with *the highest degree of professionalism, assuring fairness and dignity to all participants.*

IU0000709



# The University's Commitment

The IU Sexual Misconduct Policy prohibits discrimination on the basis of sex or gender. The policy covers:

- Sex & Gender Based Discrimination
- Sexual Harassment
- Sexual Violence (includes rape & sexual assault)
- Dating Violence & Domestic Violence
- Sexual Exploitation
- Stalking

= **"Sexual Misconduct"**

All employees of the University have an obligation to help ensure this commitment.

IU0000710



# Federal & Legal Landscape: Where We Are Now

- Title IX
  - Interim Guidance
- IU's position
- Clery/VAWA
- Due Process
  - Right to confront

IU0000711

# Sexual Misconduct Definitions

IU0000712



# Sexual Harassment

–Unwelcome conduct or behavior of a sexual nature. Sexual harassment includes sexual violence (see definition below). Both violent and nonviolent sexual harassment are prohibited by the university.

  – Sexual harassment can include:

    – Unwelcome sexual advances

    – Requests for sexual favors

    – Other verbal, nonverbal, or physical conduct of a sexual nature.

–Sexual harassment creates a hostile environment when the conduct is sufficiently serious to limit or deny a person's ability to participate in or benefit from the university's educational programs or when it affects employment—and it is prohibited.

IU0000713



# Sexual Harassment

–What conduct is "sufficiently serious" to create a hostile environment?

- Severe
    - Depends on nature and scope of the behavior
    - A single act of nonconsensual penetration is enough
    - Factors contributing to severity:
        - Humiliating
        - Threatening
        - Violent behavior
- Persistent
    - Incident or action itself is longer lasting
    - The conduct is oft-repeated
- Pervasive
    - Occurs in public spaces
    - Well-known among university community
    - Widespread, openly-practiced, or prevalent

Framework adapted from *The ATIXA Playbook*

IU0000714



# Sexual Assault

–Sexual assault includes:

- Non-consensual Sexual Penetration

    - An individual subjects another person to sexual penetration without the consent of the person, and/or by force.

- Non-consensual Sexual Contact

    - Intentional sexual touching by an individual of the intimate area of another person (i.e., genitals, breasts, buttocks) or intentional sexual touching of another person with any of these body parts, without the consent of the person, and/or by force.

IU0000715



# Sexual Assault

– Sexual penetration

- Sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse or any intrusion, however slight, of any part of the actor's or person's body or any object manipulated by the actor into the genital or anal openings of the person's body

IU0000716



# Consent

Consent is agreement or permission expressed through **affirmative, voluntary** words or actions that are mutually understandable to all parties involved, to engage in a specific sexual act at a specific time:

- Consent can be withdrawn at any time, as long as it is clearly communicated.
- Consent cannot be coerced or compelled by force, threat, deception or intimidation.
- Consent cannot be given by someone who is incapacitated, as defined below.
- Consent cannot be assumed based on silence, the absence of "no" or "stop", the existence of a prior or current relationship, or prior sexual activity.

IU0000717



# Incapacitated

A person is incapable of consent if they are unable to **understand the facts, nature, extent, or implications** of the situation due to drugs, alcohol, a mental disability, being asleep or unconscious, or based on their age (pursuant to Indiana law).

Consent does not exist when the individual initiating sexual activity **knew or should have known** of the other person's incapacitation

IU0000718



# A Note about Incapacitation

–If a person is incapacitated, there can be NO consent, ***no matter what the person says or does***

- "An incapacitated person could be stark naked, demanding sex, but if they are incapacitated at the time, and that is known or should be known to the responding party, any sexual activity that takes place is misconduct, and any factual consent that may have been expressed is IRRELEVANT." *–ATIXA Playbook*, pg. 45

–Whether Respondent should have known Complainant was incapacitated is an ***objective*** standard

- What would a reasonable person in respondent's position have known?

  - "Reasonable person" is defined as sober and exercising good judgment (*ATIXA Playbook*)

IU0000719



# Dating Violence

–Violence or the threat of violence committed by any person who is or has been in a relationship of a romantic or intimate nature. The existence of such a relationship will be determined based on a consideration of the length of the relationship, the type of relationship, and the frequency of interactions between the persons involved in the relationship.

IU0000720



# Domestic Violence

–Violence or the threat of violence by a person against a another person who:

- is or was a spouse of,

- is or was living as if a spouse of,

- has a child in common with,

- is a minor subject to the control of, or

- is an incapacitated individual under the guardianship or otherwise subject to the control of the other person regardless of whether the act or threat has been reported to a law enforcement agency or results in a criminal prosecution.

IU0000721



# Stalking

–A knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

IU0000722

# The University's Sexual Misconduct Process

IU0000723



# The University Process

When the University ***knows or reasonably should know*** about acts or potential acts of sexual **misconduct**, it must take ***immediate and appropriate steps*** to investigate or otherwise determine what occurred…

INDIANA UNIVERSITY

*16*

IU0000724





## How Does the University Respond to Reports of Student Sexual Misconduct?



Email **titleIX@iu.edu** with any questions.

Required Actions: _____

Options: - - - - - - - -

Office of Student Welfare & Title IX 2015-2016

IU0000725



# The Investigative Process Simplified

–Incident Report received

–Investigation

    – Includes:

        – Meeting with Complainant, Respondent, and any witnesses who have relevant information

        – Gathering all relevant materials

–Creation of Preliminary Investigation Report

    – Parties have 10 calendar days to review and respond in writing

–Creation of Final Investigation Report

    – Investigator determines whether it's appropriate to place a charge

    – If a charge is placed, Respondent has option to accept responsibility

–Hearing and Determination of Responsibility

–Sanctioning

–Appeal process

IU0000726



# Opportunities to Submit Information

–Parties have several opportunities to submit information for consideration:

- Meeting with the investigator (and any follow-up meetings)

- Investigator will request that parties submit witnesses and any other relevant information by a specified deadline

- Response to the Preliminary Investigation Report

IU0000727



# Anatomy of the Final Investigation Report

–Part I: Investigation Summary

- Brief summary of how the incident came to the attention of the University

–Part II: Investigation Timeline

- Outlines what took place and when throughout the course of the investigation

- E.g. when parties and witnesses were contacted; reason(s) for any delays in the investigation

IU0000728



# Anatomy of the
# Final Investigation Report

–Part III: Investigator Meeting Summaries

- Summaries of each meeting with the parties and witnesses

- Culls the relevant information from the meeting notes

–Part IV: Additional Evidence and Information

- Any documentation gathered in the course of the investigation

- Police reports, text messages, social media posts, etc.

IU0000729



# Anatomy of the
# Final Investigation Report

–Part V: Responses to the Preliminary Investigation Report

- – If complainant and/or respondent choose to submit a response to the Preliminary Investigation Report, it will be summarized here

–Part VI: Analysis and Charges

- – Will summarize material facts in dispute and not in dispute

- – Will list specific Code of Conduct section at issue

- – Panel is tasked with determining whether the respondent is responsible by a preponderance of the evidence standard for violating the *Code* and policy in the manner listed in this section

IU0000730

# Preparing for the Hearing

IU0000731



# Tips for Reading the Investigation Report

–Start by identifying the issue at the heart of the case

- – Determine what the allegations are under the *Policy* and *Code*
- – Determine what information you will need to make a decision regarding responsibility

–Read through the entire report once, to get a general sense of the nature of the case

–Then, read through the report again, identifying information relevant to the determination of responsibility

IU0000732



# Tips for Reading the Investigation Report

–Understand the role of each person in the report

- The parties (complainant and respondent)
- Witnesses
    - What does each person know? What is their relation to the incident?
- Reporting party (if applicable)

–For each person, identify any credibility concerns

IU0000733



# Tips for Reading the Investigation Report

–Understand the chronology of the incident

- What took place when

- Identify the critical points in the course of the incident

–Understand the chronology of the investigation

- Carefully review the investigation timeline

–If there is information not included in the report, try to identify why

- Typically, investigator will indicate that:

    – A witness did not meet with them

    – A party did not (or could not) provide materials (text messages, Facebook posts) relevant to the case

- If it's unclear why information wasn't included, can ask about it in the hearing

IU0000734



# On the day of the hearing...

–Wear appropriate attire

- Business casual

- i.e. no jeans, shorts, etc.

- No graphics that identify an affiliation

- e.g. Greek letters

–Eat before coming to the hearing

- Consult with OSC for special circumstances

–Arrive at least **15 minutes** before the hearing is slated to begin

- Hearings start <u>on time</u>

- Panels will often need some time to plan for the logistics of the day prior to the start of the hearing

IU0000735

# The Sexual Misconduct Hearing

IU0000736



# Hearing Room Arrangements

–Student Conduct will determine seating arrangements for each participant in the hearing ahead of time

- Panel members, including chair
- Complainant (if available)
- Respondent (if available)
- Investigator
- Witnesses
- Advisor(s) (if present)

IU0000737



# Hearing Roles

–Hearing Panel Chair

- – Responsible for organizing and running the hearing

- – Ensures that the hearing follows the procedures and is fundamentally fair

- – Determines relevance of information presented before the commission

IU0000738



# Hearing Roles

–Hearing Coordinator

- Assists the chair with the administration of the hearing

- Manages hearing logistics

- Aids in the evaluation of relevance of information and consults on other matters

- Does not have authority or influence over the outcome of the hearing

- Will not be present when the panel casts votes regarding responsibility and sanctions

IU0000739



# **Hearing Roles**

–Investigator

- Present throughout the course of the hearing

- Available to answer questions from the panel and parties at the end of the hearing

- Will not provide opening or summary statements

- Will not ask questions

IU0000740



# **Hearing Roles**

–Advisor(s)

- Both complainant and respondent are permitted to have an advisor present

- Same parameters apply as in the investigative phase

- Advisors are provided with a handout listing expectations

IU0000741



# Hearing Roles

–Hearing Assistant

- 1-2 people who assist with hearing logistics
- Ensure parties do not interact or run-into each other in the lobby or hall way
- Facilitates breaks
- Manages Witnesses
- Coordinates Technology
- Escorts parties from the building at different times

IU0000742



# The Hearing Script

–Maintained by Student Conduct

- Provides direction and structure for the hearing
- Contains:
    - Opening and purpose statements
    - Honesty statement
    - Statement of charges
    - Opportunity for complainant and respondent to speak
    - Complainant and respondent will be asked to shape their comments in response to the Investigation Report
    - Closing of the hearing and information re: notification of outcome to Respondent and Complainant

IU0000743



# Hearing Decorum

–Active Engagement

- Present an open posture

- Repeat, reaffirm, rephrase

- Be mindful—avoid a monopoly of the air

- Stay on task

- Maintain a professional tone throughout

- Create a space in which people feel comfortable sharing information

*Self-awareness is key here

IU0000744



# Questioning Participants: General Guidelines

–Appropriate questions

- – Who, what, when, where, and how
    - – ***Note:*** be cautious when using "why" questions
- – Open-ended
- – Clearly stated, in a neutral tone
- – Fact specific
- – Relevant to the case at hand
    - – Pertinent to the determination of responsibility and, if necessary, creation of appropriate outcome/sanction
- – ***Not answered by the information contained in the Final Investigation Report***

IU0000745



# Questioning Participants: General Guidelines

–Before asking a question, consider:

- What do you need to know?

- Why do you need to know it?

  - i.e. Is this information something you need to know in order to determine responsibility?

- Has this been addressed in the report?

  - i.e. Is the information you're seeking found in the report?

- Is this the best way to ask for this information?

- Is this participant the appropriate person to provide this information?

Based on information received at ATIXA investigator training 2015 and NCHERM HERM-CI certification course 2017

IU0000746



# Questioning Participants: General Guidelines

—Inappropriate to:

- Ask questions regarding prior sexual history of either party

- Inquire about prior misconduct by either party

- "Adjudicate" the conduct of the complainant in the context of the respondent's hearing

  - Note: It can be appropriate to discuss specific behaviors that either indicated consent, or lack thereof

- Ask questions answered in the Investigation Report

- Pose a question that has already been asked by another panel member

IU0000747



# Questioning the Complainant

–Consider the use of a trauma-informed approach, if applicable

–Present yourself in a manner that allows trust to be built

- Be mindful of your verbal and non-verbal behaviors

–Do not reframe the incident for the complainant

- Allow them to choose the terms that describe the incident and the impact

–Use their language/phrasing

- Repeat the phrase to establish "permission" for use

–Postpone questions if necessary to allow for complainant to answer completely

–Do not duplicate the work of the investigator

IU0000748



# Questioning Witnesses

–Keep in mind that witnesses often won't know the full story

- Don't expect witnesses to know everything—they can only share what they know

- Be cautious about revealing information

–Ask open-ended questions to verify existing reports

–Do not substitute details from another party for that of an incomplete witness account

–Be mindful of "planted" information

- Report may prompt panel members to look for this

IU0000749



# Questioning the Respondent

–Present yourself in a manner that allows trust to be built

–Be patient

- – Allow the respondent to fill the space

–Ask broad questions

- – "Please walk me through…"

–Use clarifying questions

- – "If you could, please explain further why/how…"
- – "Help me understand why/how…"

–Before confronting or challenging, consider the cost/benefit to the process

–Do not duplicate the work done by the investigator

IU0000750



# Questioning the Investigator

–Things to consider:

- What clarification is needed to determine an outcome in this case?

- ***Was information shared in the hearing that conflicts with information recorded in the Final Investigation Report?***

- Is there anything about the process leading up to the hearing that you need to understand more clearly?

- The investigator has spent the most time with the parties and the materials gathered in the course of the investigation

IU0000751

# Deliberation & Decisions

IU0000752



# Determining Responsibility

–Standard: preponderance of the evidence

– What is more likely than not to have happened in this case?

–**Use the appropriate deliberation checklist for each alleged violation**

–Determination of responsibility is NOT based upon:

– Assistance of an advisor

– Status of the case in the criminal courts

– Past record of similar offenses

IU0000753



# Assigning Sanctions

–Purpose of sanctions

- Proportionate response to the violation
- Serve as notice that the university will enforce standards
- Preserve and support the educational mission of the University
- Repair harm
    - Complainant
    - Community
    - Respondent
- Fair attempt to restore or redirect towards positive behavior
- Encourage better decision making in the future
- Provide valuable skill development

IU0000754



# Assigning Sanctions

–Factors to consider

- – Severity and degree of policy violation
- – Previous conduct record and possible pattern of behavior
- – Impact on victim and community
- – Openness to learning and likelihood of a behavioral change
- – Response or lack thereof to previous interventions

–Mitigating and aggravating factors

**\*\*Refer to the sanction guidance document in your manual**

IU0000755



# Assigning Sanctions

–Standing Sanctions: Warnings

- Formal Reprimand
    - A written letter of reprimand resulting from a student's misconduct
- Disciplinary probation
    - An extended period of warning that remains with the student for a specified period of time
    - Could impact student's ability to serve in certain leadership positions on campus, study abroad, etc.
    - If a student is found responsible for another Code violation while on probation, will receive a progressive sanction

IU0000756



# Assigning Sanctions

–Standing Sanctions: Separation

- Suspension
    - Terminates the student's enrollment at the University for a specified period of time
    - Student may not enroll at any other IU institution at this time
    - Satisfactory completion of certain stipulations may be required for readmission at the end of the suspension period
- Expulsion
    - Permanently separates the student from the university without the opportunity to re-enroll in the future
    - Student is also permanently prohibited from enrolling at another IU institution

IU0000757



# Assigning Sanctions

–Educational Outcomes

- Must assign at least one educational outcome with every standing sanction except expulsion

- Not a one-size-fits-all proposition

- When assigning educational outcomes, consider:

  - The nature of the Code and policy violation

  - Developmental needs of the parties

  - Need for community restitution/restoration

IU0000758



# Crafting a Rationale

–Institutions are required to provide a rationale for the result and sanction (if applicable) in each case

–Rationale must include:

- How the evidence and information was weighed
- How the evidence and information supports the result and sanctions (if applicable)
- How the institution's standard of evidence was applied
- ***Not enough to say that the information presented did (not) satisfy the standard of evidence***

–Assessing credibility of people/information

See *The Handbook for Campus Safety and Security Reporting* (2016), Dept. of Education

IU0000759